
# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **KENDRA HALL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **CASE NO. 5:06-CV-1208-SLB** |
| ) | |
| **SIEMENS VDO AUTOMOTIVE,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Renewed Motion for Judgment as a Matter of Law or Alternative Motion for a New Trial. (Doc. 135.)[1] Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Renewed Motion for Judgment as a Matter of Law or Alternative Motion for a New Trial, (doc. 135), is due to be denied.

**I. RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

In this Circuit, a renewed motion under Rule 50(b) must be based upon the same grounds as the original motion.

> The fact that Rule 50(b) uses the word "renew[ed]" makes clear that a Rule 50(b) motion should be decided in the same way it would have been decided prior to the jury's verdict, and that the jury's particular findings are not germane to the legal analysis. *See*, *e.g.*, [*Doe v.*] *Celebrity Cruises, Inc.*, 394 F.3d [891,] 903 [(11th Cir. 2004)]("This Court repeatedly has made clear that any renewal of a motion for judgment as a matter of law under Rule 50(b)

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

> must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury."); *Caban-Wheeler v. Elsea*, 71 F.3d 837, 842 (11th Cir.1996)(stating that a Rule 50(b) motion "may be used to renew consideration of issues initially raised in a pre-verdict motion [under Rule 50(a)]," but that the court cannot consider matters not raised in the initial motion). The jury's findings should be excluded from the decision-making calculus on a Rule 50(b) motion, other than to ask whether there was sufficient evidence, as a legal matter, from which a reasonable jury could find for the party who prevailed at trial.

*Chaney v. City of Orlando*, 483 F.3d 1221, 1228 (11th Cir. 2007).

This court has previously denied defendant's Motion for Judgment as a Matter of Law. (Docs. 130, 131.) Nothing in defendant's Renewed Motion for Judgment as a Matter of Law compels the court to reconsider its prior ruling. Therefore, defendant's Renewed Motion for Judgment as a Matter of Law will be denied.

## II. MOTION FOR NEW TRIAL

### A. STANDARD

Following a jury trial, the district court "may, on motion, grant a new trial on all or some of the issues – and to any party – . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Such grounds include "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving," as well as "substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940), *quoted in Weisgram v. Marley Co.*, 528 U.S. 440, 452 n.9 (2000). "A judge should grant a motion for a new trial when 'the verdict is

against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001)(quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence.'" *Lipphardt*, 267 F.3d at 1186 (quoting *Hewitt*, 732 F.2d at 1556).

**B. DISCUSSION**

    **1. *Batson* Challenges**

Defendant argues that the court erred in denying its preemptory challenge to two African-American jurors. Specifically it argues that the court erred by not requiring plaintiff to establish a prima facie case of discrimination before requiring it to articulate its reasons for its strikes.

It argues, "The establishment of a prima facie case is an absolute precondition to further inquiry into the motivation behind the challenged strike." (Doc. 134 at 36-37 [quoting *Central Alabama Fair Housing Center, Inc. v. Lowder Realty Co., Inc.*, 236 F.3d 629, 636 (11th Cir. 2000)].) However, when the district court considers the articulated reasons and rules on the ultimate issue of discrimination, the issue of whether plaintiff established a prima facie case is moot. *Hernandez v. New York*, 500 U.S. 352, 359

(1991)(plurality); *see also United States v. Edouard*, 485 F.3d 1324, 1342-43 (11th Cir. 2007)(citing *Hernandez*, 500 U.S. at 358). Nevertheless, "[r]acial identity between the [challenging party] and the excused person might in some cases . . . be the explanation for the [striking party's] adoption of the forbidden stereotype, and if the alleged race bias takes this form, it may provide one of the easier cases to establish both a prima facie case and a conclusive showing that wrongful discrimination has occurred." *Powers v. Ohio*, 499 U.S. 400, 416 (1991).

In this case, defendant exercised one of its three preemptory challenges to strike an African-American female. Plaintiff is an African-American female and she claims that defendant discriminated against her on the basis of her race and her gender. These facts are sufficient to establish a prima facie case of discrimination with regard to defendant's strike.

Defendant's articulated reasons for striking the prospective juror were that she looked at the ground when she entered the courtroom, she had a "sour attitude," and she was unhappy with the world. (Tr. [12/1/2008] at 177-78.) The court "totally disagree[d]" with defendant's articulated reasons and noted that the juror "seemed exactly the opposite of what [defendant was] saying to [the court], exactly the opposite. . . . [The juror] seemed . . . bright [and] not upset to be here, no attitude whatsoever. Completely the opposite, in my opinion, of what you're saying." (*Id*. at 178.) These findings, that defendant's articulated reason did not describe the juror's demeanor and affect, are sufficient to support the court's

finding that defendant used its preemptory challenge in a discriminatory manner.[2] *See Snyder v. Louisiana*, _____ U.S. _____, 128 S. Ct. 1203, 1212 (2008)("[A party's] proffer of [a] pretextual explanation naturally gives rise to an inference of discriminatory intent." (quoting *Miller-El v. Dretke*, 545 U.S. 231, 252, 277 (2005); citing *Purkett v. Elem*, 514 U.S. 765, 768 (1995); *Hernandez*, 500 U.S. at 365)(internal quotations omitted).

Defendant also argues that the court erred in not allowing it to strike an African-American male juror. The court notes that this preemptory challenge was an additional challenge and not one of defendant's three preemptory challenges allowed by law.

The court noted, "I was going to give you both an extra strike, which I don't normally do. . . . I definitely don't do it in criminal cases. But since I took one of yours away, I was going to let you . . . both have an extra strike." (Tr. [12/1/2008] at 132.) Later, the court limited its deviation from its ordinary procedure to allow defendant an additional strike. Defendant used its strike to challenge the only African-American male on the panel. (*Id.* at 134.) Plaintiff challenged this strike. Defendant said that it had struck this juror because he was a crisis advocate and because he had served as a juror on two cases that had been thrown out before deliberation. The court found these reasons insufficient and did not allow defendant an additional preemptory challenge.

---

[2] Defendant contends that "the Court itself recognized that it should have allowed the preemptory challenge," after the juror was seen texting during a bench conference. The court finds that this fact to be irrelevant to the court's finding during jury selection that defendant's articulated reason for the exercise of its preemptory challenge was unworthy of credence based on the court's observation of the juror during voir dire.

5

"In civil cases, each party shall be entitled to three peremptory challenges." 28 U.S.C. § 1870. Defendant was allowed three peremptory challenges; the court sustained plaintiff's *Batson* challenge to one of defendant's preemptory challenges. It had no right to an additional challenge. With regard to defendant's attempted exercise of a peremptory on the only African-American male on the panel, nothing in the record indicates that this juror was not qualified or could not be impartial.[3] Therefore, the court finds that denial of a fourth challenge did not deprive defendant of a fair trial by an impartial jury or otherwise result in a miscarriage of justice. *See United States v. Martinez-Salazar*, 528 U.S. 304, 317 (2000).

The court finds no reversible error in denying defendant's preemptory challenges. Therefore, the Motion for New Trial based on the *Batson* challenges will be denied.

**2. Evidentiary Issues**

Defendant argues that the court made several errors in ruling on evidentiary issues. It argues that the court excluded relevant evidence and/or admitted irrelevant and unduly prejudicial evidence.

> Evidence is relevant and, therefore, [admissible] if [it] tends "to make the existence of any fact that is of consequence to the determination of the action

---

[3] Defendant's articulated reasons for striking this juror were weak. It stated that it struck this juror because he was a "crisis advocate" and because he had been on two juries in which the jury did not deliberate. (Tr. [12/1/2008] at 134.) A number of jurors testified that they had sat on juries without revealing the result of those cases. (*See* Tr. [12/1/2008] at 34-35, 36, 40, 41, 43, 46.) The juror testified that he was a "crisis consultant" for a drug rehabilitation center and that he did the "initial consultation for . . . potential patients." (Tr. [12/1/2008] at 30.) The instant case did not involve any facts that could have any relevance to this juror's line of work.

more probable or less probable that it would be without the evidence." Fed. R. Evid. 401 & 402.  "Relevancy . . . exists only as a relation between an item of evidence and a matter properly provable in the case."  Rule 401 advisory committee notes.  Evidence is [inadmissible] if it is not relevant, Rule 402, and excludable "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Rule 403. "'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Id.*, advisory committee notes.

*Steger v. General Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003).

### a. Performance Improvement Plan ["PIP"]

Defendant argues that the court erred in allowing evidence related to plaintiff's PIP. It argues, "The evidence [of the PIP] had no independent probative value to Plaintiff's pay discrimination claims, and its introduction confused the issues and misled the jury." (Doc. 134 at 39.)  Moreover, it contends that "[w]hile [plaintiff's] counsel argued at trial that the performance improvement plan related somehow to her pay discrimination claim, she never alleged this before and, once the Court permitted introduction of the evidence, never seriously tried to link the evidence to her pay claim." (*Id.*)

Contrary to defendant's argument that the PIP was never related to plaintiff's pay claim, the court recognized the relevancy of the PIP in its Memorandum Opinion denying defendant's summary judgment. (Doc. 54 at 21.)  The court specifically stated:

> The court does not have to decide the issue of whether Hall has proven that Siemens's proffered reasons were a pretext for unlawful discrimination because Siemens has failed to meet its burden of production; nevertheless, the court notes that Hall has produced evidence that Siemens's reasons were pretextual.  First, there is an inference of pretext in Siemens's unreasonable delay in responding to Hall's request for a raise and in continuously denying

>her compensation equivalent to that of her peers, especially after admitting that her salary had been kept unreasonably low for her position by Siemens's predecessor, Chrysler. ***Second, Hall has demonstrated that any contention that Hall had performance problems is likely a mere post-event justification for keeping her salary low, as evidenced by the clear attempt by Hall's supervisors to drum up complaints about Hall's performance after they had decided to issue the PIP***. Thus, even if Siemens had produced a legitimate, nondiscriminatory reason, summary judgment would still be due to be denied because Hall has created a genuine issue of material fact as to whether Siemens's proffered reasons were pretextual.

(*Id*. [emphasis added].) Also, during the trial, the court specifically noted, "[I]n opening, [plaintiff] argued that she was placed on the performance improvement plan as a pretext to help keep her pay low. We're going into these [complaints about plaintiff's job performance] because for [defendant] to be able to argue that wasn't the reason, that she was put on it for performance problems." (Tr. [12/4/2008], at 575-76.) The court told the parties, "What's relevant is did the company have enough information to put her on a PIP or was it really a pretext to trying to keep her pay low." (Tr. [12/5/2008] at 799.)

Defendant's contention that the PIP was irrelevant to plaintiff's discrimination claims and/or that plaintiff did not argue that the PIP demonstrated pretext is simply not supported by the record. Moreover, given the circumstances, the court finds that the evidence that defendant decided to place plaintiff on the PIP at the same time it decided the amount of her raise and that defendant was unsuccessful in soliciting written complaints about plaintiff's performance are relevant to the issue of pretext and the relevancy is not outweighed by any unfair prejudice. *See United States v. Terzado-Madruga*, 897 F.2d 1099, 1119 (11th Cir. 1990)("Simply because the evidence is damaging or prejudicial to a defendant's case does

not mean, however, that the evidence should be excluded. '[I]t is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403.'" (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied* 444 U.S. 862 ((1979))(emphasis in *McRae*); *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1041 (11th Cir. 1988)([T]he ability of [the] Rule 403 dangers to outweigh substantially the probative force of the evidence is quite slim where the evidence itself is undeniably probative of a central issue in the case.").

Defendant's Motion for New Trial based on evidence of the PIP will be denied.

### b. Evidence That Plaintiff Received the Relief She Originally Demanded.

Defendant contends that it should have been allowed to cross-examine plaintiff as to whether she had received the pay she wanted. It argues:

> [Defendant] attempted to ask Plaintiff whether pay increases she received were what she hoped to achieve by filing a charge of discrimination with the EEOC and the lawsuit. The cross examination on these issues was significantly limited and [defendant] was unable to establish that Plaintiff set out to get a pay increase, that the Company significantly increased her pay, and that she achieved her goals. Obviously, if Plaintiff had admitted this it would have allowed counsel to argue to the jury there was no reason to give her further relief.

(Doc. 134 at 40.)

Defendant does not direct the court to any specific pages of the transcript at which it attempted to solicit this evidence. However, the court notes that defendant questioned plaintiff as to whether she thought it had increased her pay because she had filed an EEOC charge. (Tr. [12/9/2008] at 215.) It also questioned plaintiff regarding whether she cared

9

why she got her pay increases. (*Id*. at 215, 216.) The court found these questions to be irrelevant. (*Id*. at 217.) Contrary to its argument before this court, defendant never asked or attempted to ask plaintiff whether the ***amount*** of her pay increases were sufficient to satisfy her. (*See generally id*. at 217-21, 237-54.)

The court finds no error based on defendant's failure to question plaintiff regarding her satisfaction, or lack thereof, regarding the amount of her pay.[4]  Fed. R. Evid. 103(a)(2); *see also United States v. Sheffield*, 992 F.2d 1164, 1169 (11th Cir. 1993)("For error to be predicated on a ruling excluding evidence, Federal Rule of Evidence 103(a)(2) requires that 'the substance of the evidence was made known to the court by offer or was apparent from the context within which the questions were asked.' Fed. R. Evid. 103(a)(2). The purpose of this requirement is 'to alert the [trial] court and opposing counsel to the thrust of the excluded evidence, enabling them to take appropriate action,' and to construct a record

---

[4]Rule 103(a)(2) states:

(a) Effect of Erroneous Ruling. – Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

. . .

(2) Offer of Proof. – In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Fed. R. Evid. 103(a)(2).

appropriate for appellate review. *Parliament Ins. Co. v. Hanson*, 676 F.2d 1069, 1074 (5th Cir. Unit B 1982)).

Defendant's Motion for New Trial based on the exclusion of evidence relating to plaintiff's satisfaction with her pay raises will be denied.[5]

### c. Plaintiff's Career Focus

The court sustained objections to defendant's questions regarding whether plaintiff wanted to be an event planner and whether she had applied for jobs outside of defendant. (Tr. [12/9/2008] at 244-45, 247-48.)  During plaintiff's direct examination, the court had limited plaintiff's testimony that she had applied for other positions with defendant on defendant's objection that the evidence was irrelevant. (*Id*. at 56-57.)

Whether or not plaintiff wanted to work as an event planner is not relevant to any material issue in the case.  Defendant offered to show that, because plaintiff wanted to be an event planner, she "was not focused on being an engineer" and that she was "drifting a little bit." (Tr. [12/9/2008] at 244-45.) However, defendant offered neither plaintiff's "focus" or her "drift" as a reason for the disparity between her pay and the pay of her comparators.[6]

---

[5] The court notes that plaintiff testified on direct examination that she was unhappy with the timing and amount of the pay raises. (*See* Tr. [12/9/2008] at 78, 124-130.)

[6] Defendant argues that evidence that plaintiff wanted to be an event planner "would have contrasted with two of her comparators, Mr. Hagood and Ms. Burch, who had demonstrated career focus by obtaining advanced certifications as a Certified Quality Engineer and a Certified Quality Auditor." (Doc. 134 at 41.) Defendant questioned plaintiff about whether she was certified like Burch and Hagood; she responded that she was not certified. (Tr. [12/9/2008] at 245.) It did not ask her why she was not certified. The court notes that Burch, who is female, had a starting salary of $2,000 less than Hagood, who is

Therefore, evidence that plaintiff wanted to be an event planner is not relevant. Fed. R. Evid. 401.

Defendant's Motion for New Trial based on exclusion of evidence that plaintiff wanted to be an event planner will be denied.

Defendant asked plaintiff if she had applied for a job with another employer; the court sustained plaintiff's objection that the evidence was irrelevant. (Tr. [12/9/2008] at 247.) According to its Motion, defendant contends that it "wanted to explore this because if Plaintiff had not sought employment elsewhere, it was inconsistent with her claim that [defendant's] workplace was so permeated with discrimination that it had caused her health to deteriorate . . . . Conversely, if she had looked for another job but not found one, it could be inferred that her experience and credentials were not as impressive as plaintiff believed them to be." (Doc. 134 at 41-42.)

Defendant did not properly preserve any error in the exclusion of this evidence. During a discussion outside the presence of the jury, the court told defendant that it would allow defendant limited questioning of plaintiff regarding if she had looked for another job. (Tr. [12/9/2008] at 252.) At this point, defendant withdrew the question, and it asked only to question plaintiff on whether she liked her job.[7] (*Id*. at 251, 252, 254.) Defendant has no

---

male, and John Paynter, who is male and, like plaintiff, did not have advanced certifications.

[7]The following occurred outside the presence of the jury:

> THE COURT: I'm not saying that you can't ask whether she's looked for another job to imply that she wouldn't be emotionally stressed. The answer

12

basis in fact or law for arguing any error based on the exclusion of its question to plaintiff regarding whether she had looked for another job.

Defendant's Motion for New Trial based on exclusion of questions regarding plaintiff's alleged job search will be denied.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that defendant is not entitled to judgment as a matter of law or a new trial. An Order denying its Renewed Motion for Judgment as a Matter of Law or Alternative Motion for a New Trial, (doc. 135), will be entered contemporaneously with this Memorandum Opinion.

---

is yes. And then you can't go any further. So that gives her the argument of the opposite of what you want to argue.

MR. RUST: Right. Right. That's right. I'm not going to ask it.

THE COURT: Okay.

. . .

(In open court.)

**BY MR. RUST:**

Q. My last question, Ms. Hall is: Do you like your job at Siemens?

A. I like what I do, yes. sir.

(Tr. [12/9/2008] at 252, 254.)

**DONE**, this 30th day of September, 2010.

                                     */s/ Sharon Lovelace Blackburn*
                                     SHARON LOVELACE BLACKBURN
                                     CHIEF UNITED STATES DISTRICT JUDGE